FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN LOWERY,<br><br>                   Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                 Defendant. | NO:  4:17-CV-5036-RMP<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment from

Plaintiff Brian Lowery, ECF No. 13, and the Commissioner of Social Security (the

"Commissioner"), ECF No. 14.  Mr. Lowery sought judicial review, pursuant to 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of his

claims for supplemental security income under Title XVI of the Social Security Act

(the "Act").  *See* ECF No. 13.  The Court has reviewed the motions and the

administrative record, and is fully informed.  The motions were heard without oral

argument.  The Court grants Defendant's motion for summary judgment, ECF No.

14, and denies Mr. Lowery's cross-motion, ECF No. 13.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

## A. Mr. Lowery's Claim for Benefits and Procedural History

Mr. Lowery applied for supplemental security income, child's insurance benefits, and disability insurance benefits through applications filed on October 30, 2013. Administrative Record ("AR") 235-54.[1] Mr. Lowery was 30 years old at the time that he applied for benefits. He completed seven years of school. AR 46. Mr. Lowery initially alleged that his onset date was December 1, 2009. AR 249. Mr. Lowery's applications for supplemental security income, child's insurance benefits, and disability insurance benefits were denied initially and upon reconsideration, and Mr. Lowery timely requested a hearing.

## B. February 3, 2016 Hearing

A video hearing took place before Administrative Law Judge ("ALJ") M.J. Adams on February 3, 2016, with Mr. Lowery represented by attorney Chad Hatfield.[2] Mr. Lowery responded to questions from his attorney and Judge Adams. A vocational expert, Kimberly Mullinax, also appeared at the hearing. At the hearing, the parties agreed that Mr. Lowery's alleged onset date was October 22, 2013, a date associated with Mr. Lowery's application for supplemental security income benefits. AR 43-45. The ALJ clarified that because Mr. Lowery agreed to

---

[1] The AR is filed at ECF No. 9.

[2] Attorney Chad Hatfield also represents Mr. Lowery on appeal.

amend his alleged onset date, he was withdrawing his Title II disability insurance benefits claim and his Title II child's insurance benefits claim. *Id.* Mr. Lowery agreed that he was withdrawing his Title II claims. *Id.*

**C. ALJ's Decision**

On July 26, 2016, the ALJ issued an unfavorable decision for Mr. Lowery. AR 19. Utilizing the five-step evaluation process, Judge Adams found:

**Step one:** Mr. Lowery had not engaged in substantial gainful activity since his alleged onset date of October 22, 2013. AR 24.

**Step two:** Mr. Lowery has the following severe impairments: status post stab wound to abdomen, lumbar spine degenerative disc disease, organic mental disorders, schizoaffective disorder, anxiety, and depression. AR 24.

**Step three:** Mr. Lowery does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

**Residual Functional Capacity ("RFC"):** The ALJ found that Mr. Lowery had the RFC to

> perform light work as defined in 416.967(c) except that the claimant can lift/carry 20 pounds occasionally, 10 pounds frequently and he can stand/walk for about six hours, sit for about six hours in an eight-hour workday. The claimant is limited to frequently climbing ladders, ropes, or scaffolds, as well as frequent stooping. Next, the claimant should avoid concentrated exposures to extreme cold, vibrations, and workplace hazards such as machinery or unprotected heights. In addition, the claimant can perform simple, routine tasks and follow short,

simple instructions. He can perform work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days. The claimant can respond appropriately to supervision, but he should not be required to work in close coordination with coworkers where teamwork is required. He can deal with occasional changes in the work environment. Finally, the claimant can do work that requires no contact with the general public to perform work tasks.

AR 26-27.

**Step four:** Mr. Lowery has no past relevant work experience for the purposes of social security disability determinations. AR 32 (citing 20 C.F.R. 416.965).

**Step five:** Mr. Lowery was not disabled for purposes of the Social Security Act. AR 32-33. The ALJ considered Mr. Lowery's age, education, work experience, and RFC, and found that there are jobs that exist in significant numbers in the national economy that Mr. Lowery can perform. *Id.*

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Mr. Lowery's request for review on January 19, 2017. AR 1. Mr. Lowery now seeks judicial review.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing

42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If the claimant is

engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national

economy in view of his residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

A. **Did the ALJ reversibly err by discrediting Mr. Lowery's subjective complaints without specific, clear, and convincing reasons to do so?**

B. **Did the ALJ reversibly err by improperly weighing the testimony evidence of Mr. Lowery's medical providers?**

C. **Did the ALJ fail to meet his burden at step five to identify specific jobs available in significant numbers, which Mr. Lowery could perform in light of his specific functional limitations?**

**DISCUSSION**

**I. Plaintiff's Subjective Complaints**

Mr. Lowery argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Mr. Lowery's subjective symptom testimony regarding the extent of his impairments. ECF No. 13 at 16 (citing *Garrison*, 759 F.3d at 1014-15).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See* SSR 16-3p, 2016 SSR LEXIS 4.

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the ALJ

must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony.")). "The clear and convincing [evidence] standard is the most demanding

required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

2002)). An ALJ may consider numerous factors in making this determination,

including the claimant's reputation for truthfulness, inconsistencies either in the

claimant's testimony or between his testimony and conduct, the claimant's daily

activities, the claimant's work record, and testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which the

claimant complains. *Thomas*, 278 F.3d at 958-59.

In this case, the ALJ found that Mr. Lowery satisfied the first step of the

analysis, but concluded that the objective medical evidence and Mr. Lowery's daily

activities and treatment history were inconsistent with Mr. Lowery's allegation of

total disability. AR 27-29.

*1. Objective Medical Evidence*

Mr. Lowery argues that the ALJ erred in finding that Mr. Lowery's subjective testimony lacked credibility because the objective medical evidence of record did not substantiate Mr. Lowery's alleged level of physical and mental impairment.  AR 28-29.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008).  An ALJ may disbelieve a claimant's testimony if the claimant submits objective medical findings of an impairment that would normally produce a given symptom, but testifies that he experiences the symptom to a greater degree than would normally be expected.  *Id.* (noting that the ALJ must make specific findings justifying the decision).  An ALJ may find a claimant's testimony not credible in part or in whole, but the ALJ may not disregard the claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997); SSR 16-3p, 2016 SSR LEXIS 4.

With regards to mental health, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  An ALJ must consider reports of improvement in the context of mental health issues with an understanding of the claimant's overall well-being. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1195,

1200 (9th Cir. 2008).  These reports "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017 (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

However, an ALJ's error may be deemed harmless if, in light of the other reasons supporting the overall finding, it can be concluded that the error did not "affect[ ] the ALJ's conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (describing the harmless error test as whether "the ALJ's error did not materially impact his decision"); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (holding that an error is harmless if it was "inconsequential to the ultimate nondisability determination").  "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Mr. Lowery claims he suffers from severe back and abdominal pain.  AR 52-67.  The ALJ observed that Mr. Lowery takes medication to manage his alleged pain.  AR 28.  However, the ALJ found that the medical records indicated that Mr. Lowery did not seek further medical treatment beyond medication for the pain caused by his stab wounds.  *Id.*  The ALJ noted that Mr. Lowery's reported tingling

and numbness related to his back pain resolved when he took medication, and that Mr. Lowery stopped going to physical therapy for his back pain. *Id.*

Additionally, the ALJ found that the medical records showed that although Mr. Lowery complained of new symptoms related to his back pain in 2015 and a neurosurgical intervention was recommended, there is no evidence in the record of a neurosurgical intervention. *Id.* The ALJ also observed that the record demonstrated that Mr. Lowery had gone to the gym regularly in 2015 and that he had been performing activities such as yardwork. *Id.* The ALJ concluded based on these findings that the objective medical records did not substantiate Mr. Lowery's alleged level of physical impairment. AR 28-29.

The ALJ also found that the record indicated that Mr. Lowery had been diagnosed with a variety of mental conditions, including bipolar disorder with psychotic features, schizoaffective disorder, social anxiety disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, learning disability, and major depression. *Id.* The record further demonstrated that Mr. Lowery presented with agitation and anxiety, a depressed mood, and an impaired memory, but he also appeared to possess fair insight and judgment, average intelligence, a normal thought process, content, orientation, and fund of knowledge. AR 29. The ALJ noted that the record showed that Mr. Lowery cancelled or failed to attend therapy appointments on a number of occasions, and that he was not compliant with his medications. *Id.* The ALJ observed that the record indicated that when Mr. Lowery

was taking his medication and attending therapy consistently, he showed signs of improvement. *Id.*

Mr. Lowery argues that his failure to show up for appointments is a symptom of his mental health and that this fact bolsters his testimony. ECF No. 13 at 18. Mr. Lowery also argues that although he showed improvements, he continued to struggle with his mental health impairments. *Id.* at 18-19.

Where the evidence supports more than one rational interpretation and the Commissioner's interpretation appears rational, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Here, the ALJ considered the medical evidence of record for Mr. Lowery's physical impairments and found that Mr. Lowery's subjective testimony regarding those impairments lacked credibility. The Court finds that the ALJ properly provided clear and convincing reasons supported by substantial evidence regarding the objective medical evidence for finding that Mr. Lowery's physical impairment claims lacked credibility. However, the Court finds that the ALJ did not properly consider Mr. Lowery's signs of mental health improvement during treatment, reflected in his mental health records, in light of Mr. Lowery's overall well-being. *See Garrison*, 759 F.3d at 1017.

Although the ALJ erred in improperly considering Mr. Lowery's signs of mental health improvement during treatment, the ALJ provided several other clear and convincing reasons for finding Mr. Lowery's statements regarding his subjective

claims lacking in credibility, and the Court finds that the ALJ's error in this instance was harmless.

*2. Daily Activities*

Mr. Lowery argues that the ALJ erred in concluding that because Mr. Lowery engaged in a "somewhat normal level of daily activity and interaction," his testimony regarding his alleged impairments lacked credibility.  AR 29.

An ALJ may consider daily activities grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular kind of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Id.*  An ALJ may also consider whether the claimant's activities contradict his other testimony.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).

Here, the ALJ found that Mr. Lowery gardened and did yard work, visited with friends, cared for his animals, cleaned his room, played video games, used a computer, studied for his GED, and had been going to the gym with his cousin.  AR 29.  The ALJ concluded that Mr. Lowery's ability to participate in these activities diminished his credibility because the ALJ found that "[s]ome of the physical and

mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." *Id.* The ALJ also found that Mr. Lowery's activities contradicted his medical evidence and reports regarding the extent of his symptoms because, despite alleging that his symptoms were exacerbated by increased activities, Mr. Lowery went to the gym and performed yardwork. AR 28.

Mr. Lowery argues that the activities cited by the ALJ do not show that Mr. Lowery can maintain gainful employment. ECF No. 13 at 18. He argues that his gardening is very limited and that there is no evidence that any of his activities were performed on a sustained basis. *Id.* at 17-18. Defendant contends that the ALJ did not err in concluding that Mr. Lowery's statements regarding his alleged impairments were lacking in credibility because his daily activities contradicted his testimony regarding the severity of his alleged impairments. ECF No. 14 at 4; *see also Orn*, 495 F.3d at 639.

While the evidence may support more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner if the Commissioner's judgment applies the proper legal standards. *Tackett*, 180 F.3d at 1097. Here, the Court finds that the ALJ did not err in providing clear and convincing reasons supported by substantial evidence for concluding that Mr. Lowery's claims lacked credibility based on the ALJ's findings that Mr. Lowery's daily activities contradicted other record evidence of his impairments and some of

Mr. Lowery's daily activities were the same as those necessary for obtaining and maintaining employment.

*3. Treatment History*

Mr. Lowery argues that the ALJ erred in finding that Mr. Lowery's lack of compliance with his medications and the relatively infrequent trips documented in the record indicated that Mr. Lowery's impairments are not as severe as he alleges and that his statements lack credibility. ECF No. 13 at 18.

An ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). "Gaps in medical treatment 'may be the basis for an adverse credibility finding' unless a claimant fails to seek treatment because of inadequate funds." *Van Gilder v. Berryhill*, 703 Fed.Appx. 597, 598 (9th Cir. 2017) (citing *Orn*, 495 F.3d at 638). Noncompliance with medical care may also cast doubt on a claimant's subjective complaints. *See Fair*, 885 F.2d at 603. An ALJ may find a claimant's testimony lacking in credibility if he stops taking an effective medication due to mild side effects. *See Tommasetti*, 533 F.3d at 1039. Side effects must be less tolerable than the symptoms for a claimant to decide not to take prescribed medication. *See* SSR 16-3p, 2016 SSR LEXIS 4.

The ALJ found that Mr. Lowery did not like the way his medications made him feel and, as a result, indicated that he did not take them regularly. AR 29. The

ALJ noted that Mr. Lowery acknowledged that when he was taking his medications and attending therapy consistently, he slept better and showed signs of improvement, which included more easily leaving his house and being around other people. *Id.* The ALJ concluded that Mr. Lowery's failure to attend treatment appointments and comply with his medication suggested that Mr. Lowery's symptoms may not have been as limiting as Mr. Lowery alleged. *Id.*

Mr. Lowery argues that he missed or cancelled appointments because of his mental impairments. ECF No. 13 at 18. He also argues that his lack of compliance with his medication was due in large part to the side effects he experienced. *Id.*

Defendant contends that there is no evidence in the record that Mr. Lowery missed or cancelled appointments because of his mental impairments. ECF No. 14 at 6. Defendant also argues that Mr. Lowery's alleged side effects were mild and that the ALJ appropriately found that Mr. Lowery's side effects did not justify Mr. Lowery's failure to take his medications. *Id.* at 6-7.

The Court considers the evidence in the record. There is no evidence in the record that Mr. Lowery was unable to pursue treatment due to a lack of adequate funding. The record does reflect that Mr. Lowery missed some of his counseling sessions and explained that his uncle was in hospice. AR 790. Substantial evidence in the record supports the ALJ's finding regarding Mr. Lowery's medication noncompliance as a result of his side effects, which made him feel drowsy and "loopy." *See* AR 764, 804, 808. These side effects are not more extreme than Mr.

Lowery's alleged impairments. Therefore, the Court finds that it was proper for the ALJ to conclude that Mr. Lowery's failure to attend treatment and to take his prescribed pain medications undermined the credibility of Mr. Lowery's subjective complaints.

Thus, the Court concludes that the ALJ properly found that Mr. Lowery's statements concerning his alleged impairments were lacking in credibility.

**II. Properly Weighing Testimony of Medical Providers**

Mr. Lowery argues that the ALJ failed to properly weigh the opinions of Dr. Moon, Dr. Aggarwal, and Mr. Ansah. ECF No. 13 at 11.

The ALJ must provide legally sufficient reasons for discrediting the testimony of witnesses. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ provided adequate reasons for not fully crediting witness's statements). Failure to do so may result in reversal or remand.

The ALJ is responsible for resolving conflicting medical opinions and determining credibility. *Batson*, 359 F.3d at 1195. If the ALJ finds that the view of a treating or examining physician is uncontradicted, the physician's view can only be rejected with findings that are supported by clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another doctor's opinion, the ALJ must give "specific and legitimate" reasons supported by substantial evidence for rejecting that opinion. *Id.* "The ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

1. Tae-Im Moon, M.D.

Mr. Lowery argues that the ALJ failed to meet the legal standards for rejecting the opinion of Dr. Tae-Im Moon, who examined and evaluated Mr. Lowery in 2013 and in 2015. ECF No. 13 at 10-11.

The ALJ found that although Dr. Moon determined that Mr. Lowery had moderate to marked impairments in his ability to perform basic work activities, Dr. Moon indicated that Mr. Lowery performed well on testing and that his concentration was within normal limits. AR 30. The ALJ gave little weight to Dr. Moon's opinion because the ALJ found that Dr. Moon's findings regarding Mr. Lowery's testing and concentration were inconsistent with Dr. Moon's findings regarding the severity of Mr. Lowery's limitations and inconsistent with the overall objective evidence and Mr. Lowery's demonstrated abilities. *Id.*

Mr. Lowery argues that the ALJ's reasons for rejecting Dr. Moon's opinion were invalid. ECF No. 13 at 11. Mr. Lowery proceeds to inventory the abnormal findings in Dr. Moon's exam, contending that the ALJ focused only on the normal concentration findings of the first exam. *Id.* Mr. Lowery argues that, contrary to the ALJ's conclusion, the overall record supports Dr. Moon's findings. *Id.* at 12. Mr.

Lowery argues that the ALJ failed to specify which of Mr. Lowery's demonstrated abilities the ALJ considered inconsistent with Dr. Moon's assessment. *Id.* at 13.

Defendant contends that the ALJ properly identified contradictions between Dr. Moon's opinion of Mr. Lowery's abilities and Dr. Moon's clinical notes or observations. ECF No. 14 at 8-9 (citing *Bayliss*, 427 F.3d at 1216).

Where the evidence may support more than one rational interpretation and the Commissioner's judgment applies the proper legal standards, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Mr. Lowery has acknowledged that Dr. Moon's opinion contained normal concentration findings. ECF No. 13 at 11. Dr. Moon also provided citations to several places in the record documenting Mr. Lowery's specific abilities. AR 30 (citing AR 455, 772, 775-76, and 779). Therefore, the Court finds that the ALJ properly considered Dr. Moon's opinion and provided clear and convincing reasons, supported by substantial evidence, to give Dr. Moon's opinion little weight.

2. Shruti Aggarwal, M.D.

Mr. Lowery argues that the ALJ failed to meet the legal standards for rejecting the opinion of Dr. Shruti Aggarwal, who examined and evaluated Mr. Lowery in September of 2013. ECF No. 13 at 14; AR 388-94.

"If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*,

763 F.3d 1154, 1162 (9th Cir. 2014). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.*

In this case, the ALJ rejected Dr. Aggarwal's opinion because the ALJ felt that Dr. Aggarwal "relied quite heavily" on Mr. Lowery's subjective reports of his symptoms and limitations. AR 30-31. The ALJ further stated that "there exist good reasons for questioning the reliability of the claimant's subjective complaints." AR 31.

Mr. Lowery argues that the ALJ improperly failed to credit Dr. Aggarwal's opinion because the ALJ failed to explain how he reached the conclusion that Dr. Aggarwal's opinion was largely based on Mr. Lowery's self-report. ECF No. 13 at 14.

Defendant contends that Dr. Aggarwal referred to his own medical record as support for the degree of limitation assessed. ECF No. 14 at 11 (noting that although Mr. Lowery complained of significant limitations due to abdominal and back pain, his physical examination was "mostly unremarkable"). Defendant also argues that it appears as though Dr. Aggarwal did not review any objective medical testing because he recommended that Mr. Lowery receive a CT scan of his abdomen and an x-ray of his lumbar spine. *Id.*

The Court finds that there is no evidence Dr. Aggarwal relied on any internal or external objective medical testing in making his determinations. *See* AR 388-94.

Because the ALJ found that Mr. Lowery lacked credibility and that Dr. Aggarwal relied heavily on Mr. Lowery's subjective self-reports, the Court finds that the ALJ did not err in assigning little weight to Dr. Aggarwal's opinion.

3. Joseph Ansah, M.S., M.H.P.

Mr. Lowery argues that the ALJ failed to properly credit the opinion of Mr. Joseph Ansah, Mr. Lowery's mental health counselor. ECF No. 13 at 14-16.

An ALJ must provide germane reasons for not fully crediting non-acceptable medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Non-acceptable medical sources include therapists. *Kelly v. Astrue*, 471 Fed.Appx. 674, 677-78 (9th Cir. 2012) ("Although mental health counselors and social workers are not 'acceptable medical sources,' 20 C.F.R. § 404.1513(a), they are 'other sources' under 20 C.F.R. § 404.1513(d), and the ALJ may only disregard their testimony if he or she 'gives reasons germane to each witness for doing so.'"). Germane reasons include inconsistencies between the opinion of the witness and the medical and other record evidence. *See, e.g.*, *Carter v. Astrue*, 472 Fed.Appx. 550, 553 (9th Cir. 2012).

Here, the ALJ gave little weight to the opinion of Mr. Ansah because the ALJ found that Mr. Ansah's assessment of Mr. Lowery's limitations was inconsistent with Mr. Lowery's treatment history or the objective mental health tests contained in the record. AR 30.

Mr. Lowery argues that the reason the ALJ provided for rejecting Mr. Ansah's opinion was not valid. ECF no. 13 at 14. Mr. Lowery provides examples of how the record supports Mr. Ansah's opinion and notes that Mr. Ansah's report is consistent with that of Dr. Moon. *Id.* at 15.

Defendant contends that the ALJ provided adequate reasons for discounting Mr. Ansah's opinion and points to examples within the record that conflict with Mr. Ansah's opinion. ECF No. 14 at 12-13.

The Court finds that the ALJ's stated reasons for giving little weight to Mr. Ansah's opinion are germane, and therefore concludes that the ALJ did not err in giving little weight to Mr. Ansah's opinion. *See Carter*, 472 Fed.Appx. at 553.

**III. Step Five Hypothetical**

Finally, Mr. Lowery argues that the ALJ improperly relied upon testimony from the vocational expert that was based upon an incomplete hypothetical. ECF No. 13 at 19.

In step five of the sequential process, an ALJ may pose hypothetical questions to a vocational expert in order to determine whether employment opportunities exist in significant numbers in the national economy, given the claimant's RFC, age, education, and work experience. "[A] hypothetical question should 'set out all of the claimant's impairments.'" *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (internal citation omitted). "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to

subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has residual working capacity has no evidentiary value." *Gallant*, 753 F.2d at 1456. However, hypotheticals posed to a vocational expert "must be upheld as long as they are supported by substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

The ALJ posed the following hypothetical to the vocational expert:

> the first hypothetical includes a younger individual, only 32 years of age, seven years of formal schooling, no past relevant work. Assume this younger individual has the physical capacity to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds. Stand and or walk with the usual breaks for about six hours in an eight hour workday or sit with usual breaks for about six hours in an eight hour workday. Push and or pull including operation of hand and foot controls unlimited other than shown for lift and carry. Postural limitations include unlimited climbing of ramps or stairs, frequently climbing of ladders, ropes or scaffolding, unlimited balance, frequently stoop, unlimited kneel, unlimited crouch. Unlimited crawl, no manipulative limitations or visual limitations or communication limitations. Environmentally the individual should avoid concentrated exposure to extremes and cold, vibrations, hazardous machinery or working at unprotected heights. Further assume this younger individual can perform simple, routine tasks and follow short, simple instructions. Do work that needs little or no adjustment and can perform simple duties that can be learned on the job in a short period of less than 30 days. The individual can respond appropriately to supervision but should not be required to work in close coordination with coworkers where team work is required. The individual can deal with the occasional changes in the work environment and can do work that requires no contact with the general public to perform the work task.

AR 75-77.  The vocational expert responded that jobs existed in the national economy for an individual sharing those characteristics, including assembler, packing line workers, and housekeeping cleaner.  AR 77.

Mr. Lowery argues that the hypothetical posed to the vocational expert by the ALJ failed to set forth the limitations found by Dr. Moon, Dr. Aggarwal, and Mr. Ansah, which Mr. Lowery argues the ALJ improperly rejected.  ECF No. 13 at 20. Mr. Lowery contends that the ALJ's hypothetical was incomplete and is therefore without evidentiary value.  *Id.* at 19.  Mr. Lowery argues that when the vocational expert considered the additional limitations found by Dr. Moon, Dr. Aggarwal, and Mr. Ansah, the vocational expert testified that Mr. Lowery would be unable to sustain competitive employment.  *Id.* at 20.

Defendant contends that the ALJ was not required to include properly discounted evidence in the hypothetical question presented to the vocational expert. ECF No. 14 at 13 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)).

The Court finds that because the ALJ did not err in rejecting the opinion testimony of Mr. Lowery's medical providers, the hypothetical that the ALJ posed to the vocational expert was supported by substantial evidence in the record and is not error.

/ / /

/ / /

**CONCLUSION**

Mr. Lowery argues that the ALJ's decision should be reversed and remanded for further proceedings or remanded for an immediate award of benefits. ECF No. 13 at 20. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that the ALJ's decision is supported by substantial evidence and free of any harmful legal error.

Accordingly, **IT IS HEREBY ORDERED:**

1.     Defendant's Motion for Summary Judgment**, ECF No. 14**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.     Judgment shall be entered in favor of Defendant.

The District Court Clerk is directed to enter this Order, enter judgment for Defendant, provide copies to counsel, and **close this case**.

**DATED** March 19, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
